IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PRESTON KYLE COCKERELL,

    Plaintiff,

v.                                                                                                 CIV 12-0658 RB/KBM

FNU MORRIS, Major, a/k/a Gerald Morris,
SANDRA HOPKINS, Medical Staff, and
ROSE KEATON, Medical Staff,

    Defendants.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

THIS MATTER is before the Court on two separate *Martinez* Reports filed by Defendants, one of which was filed ex parte and Defendants provided Plaintiff with a redacted copy with the Court's permission, and on motions by Plaintiff seeking additional information. *See Docs. 33, 35, 36, 39, 40, 44, 45.* The *Martinez* Reports are exceptionally well researched and documented, and the Court incorporates them herein by reference. For the reasons below, the Court recommends that Plaintiff's motions be denied, summary judgment enter in favor of Defendants, and this action be dismissed with prejudice.

## I.  Background & Preliminary Matters

On October 28, 2009, officers employed pepper spray against rioting prisoners in the Special Housing Unit of the Guadalupe County Correctional Facility. Plaintiff was one of the inmates in the unit where this occurred. He was transferred to Western New

Mexico Correctional Facility several months later, around January 5, 2010.  *See Doc. 39-6* at 2, ¶ 9*.*  Even though he complains about the immediate effects of the spray, he did not file suit until June 2012, at the tail end of the applicable three-year statute of limitations period.[1]

To describe what occurred, who was involved, any gang affiliation of the inmates, and the results of the intervention, Defendant Morris needed to provide confidential information in his *Martinez* Report.  Given the sensitive nature of the background and supporting documentation, the Court allowed him to file his *Martinez* Report ex parte, and to provide Plaintiff with a redacted version.  The Court also granted Plaintiff's request for an extension to respond.  *See Docs. 36, 40-42.*

The relevant nonsensitive background facts are as follows.  Initially, rioting individual inmates were directly pepper sprayed to gain compliance in removing them from their cells.  The situation escalated throughout other cells in the unit with inmates refusing to be removed and covering themselves with personal property to avoid any pepper spray.  Therefore, the officers resorted to the use of a "pepper fogger," a projectile that can be put through a cell door opening and aerates the spray.  *See Doc. 34* at 2-3 (ex parte version; background section redacted from disclosed version, *see Doc. 40* at 2-3).

---

[1] *See, e.g., Casanova v. Central N.M. Corr. Dept.,* 502 F. App'x 774, 775-76 (10th Cir. 2012) (three-year statute of limitations).

[2] Plaintiff's motion for an extension does not specify which *Martinez* Report for which he sought the extension.  *See Doc. 41*.  Defendant Morris' *Martinez* Report addresses the law concerning medical care claims, and the denial of shower and medical care allegations.  It asserts, as does the other Defendants' *Martinez* Report, that Plaintiff did not request any medical attention beyond what was provided to the inmates who were exposed to the pepper spray.  *See Doc. 40* at 16.  It is true that the Court's text-entry granting the response only mentions and links

There is no dispute that the rioting took place or that Plaintiff's cell was not directly fogged.  The fog did, however, impact some thirty inmates, and Plaintiff was among them.  *See Doc. 1* at 2-3; *Doc. 34* at 3 (ex parte); *Doc. 34-3* at 19 (ex parte).  Plaintiff's quarrel is not with the use of pepper spray to "quell the disturbance."  *Doc. 43* at 1.  Indeed, he "understands and agrees that is was appropriate to use chemical agents to compel inmates to submit to hand restraints so they could be removed from their cells."  *Doc. 43* at 1.

Plaintiff's response explains that his suit focuses on a narrower issue.  He contends that it was unreasonable to release pepper fog that could travel throughout the unit because:  (1) the eight inmates who initiated the rioting had already been removed; (2) the remaining inmates were locked in their cells and posed no threat to the officers; and (3) the officers did not first remove inmates who were willing to "cuff up" and "leave" voluntarily.  *See Doc. 1* at 3, 6-10; *Doc. 43* at 1-2.  He also maintains that he was not permitted to shower after being exposed to the pepper spray, which is "part of NMCD policy."  *Doc. 2* at 2.  He further asserts that his complaints about his symptoms in the aftermath of the fogging – not being able to breathe, coughing, and a rash on his genitals – were completely ignored and that he received no medical treatment for these conditions until he was transferred to Western.  *See Doc. 43* at 2-3; *Doc. 39-6* at 2, ¶ 9.

Because his response encompasses his excessive use of force and medical care claims, the Court considers it responsive to both sets of reports.  Plaintiff did not object to the Court's order granting the extension, nor has he responded in any way to the reply by Defendants Hopkins and Keaton in an effort to file anything additional about his

medical care allegations. The reasons he has not done so are evident from the record.[2] If the Court is mistaken, however, Plaintiff can address any other matters pertaining to his medical care claim in his objections.

Instead, what concerns Plaintiff is the additional information he requests be made available to him. He wants a copy of the "NMCD confidential policy to the full use of force report," *Doc. 44,* and the "video evidence" documenting the events, *Doc. 45.* Both requests will be denied by a separate order to be entered today. First, these materials are confidential and sensitive for the same reasons illustrated in the ex parte *Martinez* Report. Second, as discussed above, the underlying events that took place are not in dispute. Third, to the extent that Plaintiff's "no access to shower" claim rests on a violation of the prison policy, it affords no basis for relief.[3]

## II.  PLRA Exhaustion

Defendants Hopkins and Keaton alternatively move to dismiss the suit due to Plaintiff's failure to exhaust administrative remedies before filing suit. "[U]nder the

---

[2] Plaintiff's motion for an extension does not specify which *Martinez* Report for which he sought the extension. *See Doc. 41*. Defendant Morris' *Martinez* Report addresses the law concerning medical care claims, and the denial of shower and medical care allegations. It asserts, as does the other Defendants' *Martinez* Report, that Plaintiff did not request any medical attention beyond what was provided to the inmates who were exposed to the pepper spray. *See Doc. 40* at 16. It is true that the Court's text-entry granting the response only mentions and links Defendant Morris' report, *see Doc. 42,* and Plaintiff's response is captioned "answer to . . . redacted *Martinez* Report," *Doc. 43*. Defendants Hopkins and Keaton also observed in their reply, however, that Plaintiff's response encompasses both reports, and he simply reiterates the claim in his complaint that his medical requests were "ignored," notwithstanding the documented medical care he received immediately after pepper spray. *See Doc. 46* at 1-2; *see also Doc. 1* at 3; *Doc. 2* at 2; *Doc. 33* at 1; *Doc. 39* at 15.

[3] *See, e.g., Davis v. Scherer,* 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Porro v. Barnes,* 624 F.3d 1322, 1329 (10th Cir. 2010) ("violation of a prison regulation does not give rise to an Eighth Amendment violation absent evidence the prison official's conduct failed to conform to the constitutional standard"); *Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("a failure to adhere to administrative regulations does not equate to a constitutional violation").

Prison Litigation Reform Act of 1995 ("PLRA") . . . '[i]nmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed.'" *Davis v. Jones,* 390 F. App'x 803, 804 (10th Cir. 2010) (quoting district court opinion). An inmate must fully exhaust the grievance process by "'using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo,* 548 U.S. 81, 90 (2006) (citation omitted) (emphasis original); *see also Hicks v. Jones,* 332 F. App'x 505, 506 (10th Cir. 2009) ("'An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies.'") (quoting *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002)).

If an inmate does not exhaust, the Court has no choice but to dismiss his claims on this basis alone. *See Mitchell v. Figueroa,* 489 F. App'x 258, 260 (10th Cir. 2012) ("the record also indicates that he failed to fully exhaust the remedies available to him. Thus, the district court was required under the PLRA to dismiss his complaint."); *Davis,* 390 F. App'x at 804 (because prisoner did not exhaust, "we are obliged to conclude the district court was correct to dismiss his suit"). As recently held in this District:

> Plaintiff's allegations, if taken as true, paint a disturbing picture. The Court is very concerned about the circumstances giving rise to this complaint and the serious physical injuries suffered by Plaintiff. However, under the strict terms of the PLRA, the Court may not address the merits of Plaintiff's complaint without first being satisfied that all available administrative remedies were exhausted. This Court has no discretion to excuse noncompliance with prison grievance procedures. *Booth v. Churner,* 532 U.S. 731, 738–41 (2001). Because the Court has found that Plaintiff failed to exhaust all available administrative remedies prior to filing suit, the complaint must be dismissed.

*Rouse v. Baca,* No. CV 11–0433 MV/CG, 2012 WL 4498866, at *7 (D.N.M. Sep. 25, 2012).[4]

On the other hand, the "'burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.'" *Webb v. Jones,* Nos. 12–6250, 12–7070, 12–7071, 2013 WL 2168143, at * 2 (10th Cir. May 21, 2013) (quoting *Roberts v. Barreras,* 484 F.3d 1236, 1241 (10th Cir. 2007)). In addition, the Tenth Circuit has "'obligated district courts to ensure that any defects in exhaustion are not procured from the action or inaction of prison officials.'" *Whitmore v. Jones,* 456 F. App'x 747, 750 (10th Cir. 2012) (quoting *Tuckel v. Grover,* 660 F.3d 1249, 1254 (10th Cir. 2011)).

Defendants attach the inmate grievance policy and contend "Plaintiff filed no grievance, formal or informal, while at [Guadalupe County Correctional Facility] regarding his alleged injuries," just as he failed to submit any request for medical care. *Doc. 39* at 13; *see also Doc. 39-9.* Although Defendants properly documented the absence of Plaintiff's medical care requests with the affidavit of a Health Services

---

[4] Dismissals for failure to exhaust are made without prejudice so that the prisoner can exhaust and then return to court with another lawsuit. *See Wilson v. Benzona,* 485 F. App'x 976, 978 (10th Cir. 2012) ("we REMAND to the district court so that it may modify its dismissal to be without prejudice for failure to exhaust administrative remedies."); *Mitchell,* 489 F. App'x at 260 ("Because the district court dismissed the complaint without prejudice, Mitchell can refile if and when he actually exhausts his administrative remedies."). Since the policy will not entertain a years-belated submission, which would be the case here, dismissal for failure to exhaust effectively constitutes a dismissal of that claim with prejudice. *See Doc. 39-3* at 9 (twenty-day limit from date of event to file written grievance)*; c.f., Braxton v. Zavaras,* 614 F.3d 1156, 1161-62 & n.4 (10th Cir. 2010) (Colorado law; even if PLRA exhaustion requirement considered an "extraordinary circumstance," if inmates not diligent while further exhausting and returning to federal court after dismissal, equitable tolling inapplicable); *Roberts,* 484 F.3d at 1241-42 (New Mexico law; three-year federal statute of limitations for § 1983 claims does not run due to statutory tolling while an inmate grievance is pending, but uncompleted and to determine "how long [the inmate's] claim should be tolled, we must know how long his grievance remained viable under the institution's grievance procedures in effect at the time of [the] grievance;" equitable tolling requires an "extraordinary event beyond" Plaintiff's control).

Administrator and declaration of a medical records custodian, they do not submit any grievance documentation or include an affidavit from the records custodian explaining efforts to locate any of his grievances. *See Docs. 39-6 – 39-7.* As such, the Court declines to recommend dismissal on exhaustion grounds, and turns to the defense's alternative argument on the merits.

### III. Use Of Pepper Spray Did Not Violate Constitutional Standards

Plaintiff's theory of recovery is based on the premise that the officers were required to individually evaluate inmates for compliance and extract and segregate them before using pepper fog on the inmates who were noncompliant. To prevail for a claim of excessive use of force under the Eighth Amendment, Plaintiff must show both the objective element of harmful conduct sufficient to establish a constitutional violation, and the subjective element of whether the force was applied in good faith to maintain discipline or maliciously and sadistically to cause harm. *See, e.g., Smith v. Cochran,* 339 F.3d 1205, 1212 (10th Cir. 2003). Plaintiff cannot meet either prong.

Here, there is no dispute that the situation called for measures to restore order. The Tenth Circuit, as do other courts, hold that, although use of pepper spray could constitute excessive use of force, the use of pepper spray under these circumstances does not violate the Eighth Amendment.[5] Prison officials can, consistent with the

---

[5] *Compare, e.g., Green v. Corr. Corp. of Amer.,* 401 F. App'x 371, 376 (10th Cir. 2010) ("Green admits that he was physically restraining another prisoner immediately before Medill used the pepper spray. A prison official may use reasonable force to 'maintain or restore discipline.'") (quoting *Whitley v. Albers,* 475 U.S. 312, 320 (1986)), *Grissom v. Roberts,* 435 F. App'x 717, 718-20 (10th Cir. 2011) (affirming dismissal for "substantially the same reasons" as district court, which dismissed complaint at screening stage because inmate's own allegations established he was, among other things, disruptive disrespectful, and combative, and he did not allege "severe pain or lasting injury as a result of the pepper spray"), *Brown v. Williams,* No. 1:09–cv–00792–LJO–GBC (PC), 2011 WL 386852, at * 6 (E.D. Cal. Feb. 3, 2011) ("use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to . . . subdue recalcitrant

Constitution, use pepper fog in a unit to restore order even though innocent bystanders are affected by their choice of intervention.[6]

## IV. Plaintiff Did Not Request Medical Care Beyond What He Received

---

prisoners does not constitute cruel and inhuman punishment") (internal quotations and citation omitted), *and Thomas v. McNeil,* No. 3:04–cv–917–J–32JRK, 2009 WL 64616, at * 22 (M.D. Fla. Jan. 9, 2009) ("the use of chemical agents as a means of force against a recalcitrant prisoner who refuses to obey an order generally does not, in itself, violate the Eighth Amendment"), *with Iko v. Shreve,* 535 F. 3d 225, 231-33 (4th Cir. 2008) (videotape showed inmate in cell who attempted to comply repeatedly pepper sprayed, shackled and placed in spit mask; inmate not treated or decontaminated, remained in spit mask, placed face down on floor with officers kneeling on him to replace metal handcuffs with flex cuffs after he collapsed, and left face down in spit mask in cell without further attention and died of asphyxsia; held law clearly established and facts presented precluded grant of qualified immunity), *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (officer's discharge of pepper spray, indiscriminately and as practical joke states Eighth Amendment claim)*, and Norton v. City Of Marietta,* 432 F.3d 1145, 1152-54 (10th Cir. 2005) ("the facts relevant to both the objective and subjective elements of the excessive force test [regarding use of pepper spray] are hotly contested . . .  Given the dearth of evidence in the record, the district court could not have reached these conclusions unless it chose to believe defendants over plaintiff.").

[6] One case that expressly addresses bystander inmates affected by pepper spray is *Clement v. Gomez,* 298 F.3d 898 (9th Cir. 2002), which held that "bystander prisoners who were exposed to pepper spray when prison officials dispensed spray across their pod area to break up a fight were not subjected to excessive force."  *Stewart v. Stewart,* 60 F. App'x 20, 22 (9th Cir. 2003) (citing *Gomez,* 298 F.3d at 903-04).  Another is from the Fifth Circuit, which "found no violation of the Eighth Amendment when chemical force was used on a bus loaded with inmates, even though only one or two of the inmates was being disruptive and even though the inmates were then denied the ability to wash off the pepper spray." *Paldo v. Weston,* No. 2:02-CV-0280, 2003 WL 22227866, at * 2 (N.D. Tex. Sept. 26, 2003) (citing *Baldwin v. Stalder,* 137 F.3d 836 (5th Cir. 1998); *see also Haley v. Corr. Corp. of Amer.,* No. 08–cv–1057, 2009 WL 2231673, at * 3 (W.D. La. Jul. 23, 2009) (allegation that pepper spray used on another tier wafted over the unit causing discomfort deemed "frivolous").  More recent decisions from courts in other circuits indicate the same.  *See, e.g., Griffin v. Kyle,* No. 2:10–cv–664, 2012 WL 122360, at *7 (S.D. Ohio Jan. 17, 2012) (officers' affidavit states "here was a potentially dangerous situation developing on the day in question, that it could have led to a riot, and that she used tear gas and pepper spray in an effort to protect herself and other members of the prison staff.  Were that all true, a reasonable jury could conclude that she did not act with the required sadistic or malicious purpose and that her use of force, including chemical agents, was reasonably related to the legitimate need to maintain order in the prison and was not excessive given the circumstances that faced her;" however, verified complaint and affidavit of another officer differed); *Dunmore v. Cole,* No. 5:08cv00255 BSM/JTR, 2010 WL313286, at **7 (E.D. Ark. Jan. 19, 2010) (officer not required to warn prisoners in pod before deploying pepper spray where inmates "banned together" in refusal to obey command to return their food trays; inmates surprised at choice of intervention and thought lesser punishment would have sufficed); *Simmons v. Everett,* Civil Action No. 3:07CV172, 2008 WL 3843455, at *4 (E.D. Va. Aug. 15, 2008) (innocent bystander injured by stray rubber bullet "unfortunate," but amounted to "a reasonable level of force in a good faith effort to restore order.").

Plaintiff contends that his requests for medical care were ignored, but the record conclusively establishes otherwise. It shows that he was evaluated immediately following the incident, determined to not have any injuries, and thereafter did not submit any request for medical care from the date of the incident through the two months he remained at the Guadalupe facility until he was transferred. *See Doc. 34* at 16 (ex parte); *Doc. 34-3* at 19 (ex parte); *Doc. 39* at 2-3, 5-6; Doc. 39-1; Doc. 39-2; Doc. 39-6; Doc. 39-7. Accordingly, there is no evidence of either a serious medical need or a deliberate indifference to a known risk of harm.[7]

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's medical care claims not be dismissed for lack of exhaustion, but that summary judgment enter in favor of all Defendants on the merits, and this action be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE

---

[7] *See, e.g., Campbell v. Singh,* 496 F. App'x 774, 77 (10th Cir. 2012) ("For a prison official's action to violate the Eighth Amendment, two requirements must be met. First, the inmate must be deprived of a serious need. . . . '[T]he deprivation alleged must be, objectively, sufficiently serious . . . [and] result in the denial of the minimal civilized measure of life's necessities.' . . . An official's failure to act is with deliberate indifference when that official is 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw[s] the inference.") (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994)).

-10-

Case 1:12-cv-00658-RB-KBM   Document 50   Filed 07/29/13   Page 10 of 10